# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIENT SENSORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>XILINX INCORPORATED,<br><br>Defendant. | C.A. No. 22-00173-MN |

## DEFENDANT XILINX, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

OF COUNSEL:

Aaron R. Fahrenkrog (*pro hac vice*)
Emily J. Tremblay (*pro hac vice*)
Mary Pheng (*pro hac vice*)
William R. Jones (*pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
(612) 349-8500
AFahrenkrog@RobinsKaplan.com
ETremblay@RobinsKaplan.com
MPheng@RobinsKaplan.com
WJones@RobinsKaplan.com

April 1, 2022

Frederick L. Cottrell, III (#2555)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
ewing@rlf.com

*Attorneys for Defendant Xilinx, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS....................1

III. SUMMARY OF THE ARGUMENT ..................................................................................2

IV. CONCISE STATEMENT OF FACTS ................................................................................3

V. ARGUMENT.......................................................................................................................6

    A. The complaint does not state a claim for direct infringement. ...............................7

        1. The complaint does not plead facts indicating that the accused products are capable of "digitizing the analog inputs at one of at least two possible bit depths" and instead identifies only one possible bit depth per accused product. ........................................................ 8

        2. The complaint does not plead facts indicating that the accused products include "non-volatile memory" separate from "embedded memory for storing an initialization program." ........................................ 12

    B. The complaint does not state a claim for induced infringement............................14

    C. The complaint does not state a claim for contributory infringement....................14

VI. CONCLUSION..................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) .................................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 6

*Bos. Sci. Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019) .................................................................................. 14

*Cumberland Pharms. Inc. v. Sagent Agila LLC*,
    C.A. No. 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013) .............................. 11, 12

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012) ......................................................................................... 15

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) ......................................................................................... 15

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) ...................................................................................... 7

*Philips v. ASUSTeK Computer Inc.*,
    C.A. No. 15-1125-GMS, 2016 WL 6246763 (D. Del. Oct. 25, 2016) .............................. 15

*Uniloc 2017 LLC v. Zenpayroll, Inc.*,
    C.A. No. 19-1075-CFC-SRF, 2020 WL 4260616 (D. Del. July 23, 2020) ............... 6, 7, 15

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................................ 7

35 U.S.C. § 271(b) ...................................................................................................................... 14

35 U.S.C. § 271(c) ...................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 6

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 6

I.  **INTRODUCTION**

Sentient's complaint does not plead facts sufficient to state a plausible claim of direct, induced, or contributory patent infringement. Instead, it provides an imprecise attempt to map only paraphrased claim limitations to Xilinx reference materials. As a result, the complaint has many gaps in its factual allegations and does not state a plausible claim for infringement.

The complaint does not plead facts sufficient to state a claim for direct infringement of the asserted patent because it does not allege any facts to support two claim limitations. First, the asserted claim recites "at least two possible bit depths," but the complaint does not identify more than one "bit depth" for any accused product. Second, the asserted claim recites separate "non-volatile memory" and "embedded memory" limitations, but the complaint does not identify more than one memory for these limitations in any accused product. Indeed, the complaint's pattern of identifying *one* element in each accused product where the claim expressly requires *two* indicates that the accused products do *not* infringe.

The complaint's induced and contributory infringement allegations fare no better. The complaint does not assert that a third party satisfies the missing bit depths limitation, so the complaint cannot state plausible claims under those theories, either. The complaint does not state a plausible claim for contributory infringement for the additional reason that it does not allege any facts suggesting that the accused components have no substantial non-infringing use.

For these reasons, Xilinx requests that the Court dismiss all counts of Sentient's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.  **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

On February 8, 2022, Plaintiff Sentient Sensors, LLC, filed a complaint against Defendant Xilinx, Inc., alleging direct, induced, and contributory infringement of U.S. Patent No. 6,938,177 ("the '177 patent"). D.I. 1. On March 3, 2022, the parties stipulated to and the

Court ordered an extension of Xilinx's deadline to answer or otherwise respond to the complaint, to April 1, 2022. D.I. 8. Now Xilinx moves to dismiss Sentient's complaint.

## III.    SUMMARY OF THE ARGUMENT

Sentient's complaint fails to state a claim upon which relief can be granted, warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6):

1. The complaint does not state a claim for direct infringement under 35 U.S.C. § 271(a) because it does not plead facts sufficient to show or to support a plausible inference that the accused products satisfy each limitation of the one asserted claim. Specifically, the complaint does not plead facts indicating that the accused products include:

    (1) "a plurality of analog-to-digital converters for receiving a plurality of analog inputs, digitizing the analog inputs at one of at least two possible bit depths, thereby generating digital inputs, and providing the digital inputs to the processor"; and

    (2) "a non-volatile memory storage component" and "an embedded memory for storing an initialization program that enables the processor to start up processing without first retrieving a program from the non-volatile memory."

    D.I. 1-1 at 9:55-10:19 ('177 patent claim 1). Instead, the complaint plead facts suggesting that the accused products do *not* satisfy those limitations and, thus, do *not* infringe.

2. The complaint does not state a claim for induced infringement under 35 U.S.C. § 271(b) because (1) it does not state a claim for underlying direct infringement; and (2) it does not allege that a third party satisfies, or that Xilinx causes a third

2

        party to satisfy, claim limitations missing from the complaint's direct infringement allegations.

3.     The complaint does not state a claim for contributory infringement under 35 U.S.C. § 271(c) because (1) it does not state a claim for underlying direct infringement; (2) it does not allege that a third party satisfies claim limitations missing from the complaint's direct infringement allegations; and (3) it does not plead facts indicating that the accused components have no substantial non-infringing use.

## IV. CONCISE STATEMENT OF FACTS

Sentient contends that Xilinx infringes the '177 patent. *See generally* D.I. 1. The '177 patent, titled "Multi-chip module smart controller," is directed to "[a] multi-chip module instrument controller having various interface and operational capabilities." D.I. 1-1 at Abstract. The multi-chip module instrument controller incorporates "a microprocessor and both volatile and non-volatile memories," "variable analog-to-digital conversion bit depths, with higher bit depths for some applications," and "a separately controllable field programmable gate array that acts as a parallel processor with internal or separate external clock." *Id.*

The '177 patent describes using a "tightly coupled" multi-chip module (or "MCM") over using "a single integrated circuit" or "system-on-a-chip." *Id.* at 1:61-2:1. It asserts that the MCM invention provides "greater functional capability than would have been possible using a single integrated circuit." *Id.* at 1:61-64. The patent further distinguishes the MCM invention from single integrated circuits, asserting that "the invention is similar to a 'system-on-a-chip' and appears similar to a chip in size, weight and physical configuration, but through a tightly coupled MCM implementation, transcends the functional capability of a single integrated circuit." *Id.* at 3:53-60.

The '177 patent also emphasizes that the invention provides analog-to-digital conversion at more than one "bit depth." It explains that "an electronics instrument controller designed in accordance with the invention includes a significant improvement in functionality and circuitry design over prior art MCM controllers, such as the AIC in U.S. Pat. No. 6,148,399. For example, the present invention improves on the digitizing precision and offers variable A/D conversion bit depths, with higher bit depths for some applications." *Id.* at 2:40-46. Indeed, the patent criticizes prior art systems that provide conversion at only one bit depth:

> Additionally, the AIC in U.S. Pat. No. 6,148,399 performs all A/D conversion at a 10 bit digitizing depth and does not offer variable conversion as may be required by different processes. For example, it may be preferred that some processes execute at a higher bit depth of 14 bits while some may be able to execute at a lower bit depth of 10 bits and still ensure accuracy. The AIC of U.S. Pat. No. 6,148,399 uses a constant bit depth of 10 bits for its A/D conversion so all processes are executed at the same bit depth. **Accordingly, what is needed is an MCM design capable of performing A/D conversion at different bit depths such that multiple parallel processes which require different bit depths can be executed in an independent fashion.**

*Id.* at 2:18-30 (emphasis added).

The '177 patent further emphasizes the importance of an "embedded memory" separate from a "non-volatile memory." *Id.* at 4:57-62. It explains that one embodiment of the invention improves on prior art systems because the embodiment "includes an embedded memory that enables the startup of processing without first loading a program from the non-volatile memory. This improves on the prior art systems which can only operate after a program is first loaded from non-volatile memory." *Id.*

The complaint asserts claim 1 of the '177 patent. *See* D.I. 1 ¶ 25. Claim 1 recites (1) analog-to-digital converters that can digitize analog inputs to at least two possible bit depths;

4

and (2) an embedded memory that enables the processor to start up processing without first retrieving a program from the separate non-volatile memory:

> 1. An instrument controller comprising:
>
> **a non-volatile memory storage component** for program and data storage;
>
> a large volatile memory storage component for additional program and data storage;
>
> a processor coupled to both the non-volatile memory storage component and the large volatile memory storage components, the processor capable of high-frequency and low-frequency operations and having **an embedded memory for storing an initialization program that enables the processor to start up processing without first retrieving a program from the non-volatile memory**;
>
> at least two internal oscillators coupled to the processor, for providing clock signals for the low-frequency and high-frequency operations;
>
> a plurality of gates arranged in a field programmable gate array, the gate array coupled to the processor and configured to run independent processes in parallel with the processor; and
>
> **a plurality of analog-to-digital converters for receiving a plurality of analog inputs, digitizing the analog inputs at one of at least two possible bit depths, thereby generating digital inputs, and providing the digital inputs to the processor**;
>
> wherein a first portion of the gates in the field programmable gate array is configured to perform signal processing; and
>
> wherein a second portion of the gates in the field programmable gate array is configured to operate as a signal distribution matrix for rerouting signals within the instrument controller.

D.I. 1-1 at 9:55-10:19 (emphasis added).

The complaint identifies three series of accused products: Xilinx's Zynq-7000, Zynq UltraScale+, and Versal products, plus associated products and development kits.[1] D.I. 1 ¶ 24. Xilinx's Zynq-7000, Zynq UltraScale+, and Versal products are single integrated circuits each implemented as a system-on-a-chip (SoC). *See, e.g.*, *id.* ¶ 26 (citing Xilinx manuals describing products as based on "Xilinx® SoC architecture"). For each accused product, the complaint does not identify more than one possible "bit depth" for analog-to-digital conversion and does not identify an "embedded memory" separate from a "non-volatile memory." *Id.* ¶¶ 27, 31, 34.

## V.     ARGUMENT

Xilinx moves to dismiss all counts of Sentient's complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require detailed factual allegations," but it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The well-established *Iqbal* / *Twombly* standard applies to complaints asserting patent infringement. *See, e.g.*, *Uniloc 2017 LLC v. Zenpayroll, Inc.*, C.A. No. 19-1075-CFC-SRF, 2020 WL 4260616, at *2 (D. Del. July 23, 2020). Under *Iqbal* / *Twombly*, "before filing a complaint,

---

[1] The complaint includes facts related to those three products—Zynq-7000, Zynq UltraScale+, and Versal—and alleges that Sentient accuses other Zynq-based products based on those facts. D.I. 1 ¶ 37.

counsel must ascertain exactly what claims should [be] alleged to be infringed and *how they are infringed*. . . . And, it will mean taking great care when crafting a succinct, but sufficient, patent complaint. But, that is not asking too much." *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 803 (E.D. Va. 2014) (emphasis added). Here, Sentient's complaint does not satisfy that threshold.

**A.     The complaint does not state a claim for direct infringement.**

The complaint does not state a claim for direct infringement under 35 U.S.C. § 271(a) because it does not plead facts addressing how the accused products satisfy claim 1's "at least two possible bit depths" and "embedded memory" limitations. For these two independent reasons, Xilinx requests that the Court dismiss Sentient's direct infringement claim.

To state a claim for direct infringement, the complaint "must plead facts that plausibly indicate that the accused products contain each of the limitations found in the claim." *Uniloc 2017 LLC*, 2020 WL 4260616, at *3 (citation and internal quotation marks omitted). "[I]f it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not plausible that the accused infringer actually infringes the patent claim (or the patent)." *Id.* at *2 (citation omitted).

The complaint omits facts addressing several claim limitations, beyond the "at least two possible bit depths" and "embedded memory" limitations.[2] The absence of facts addressing those

---

[2] For example:

- The complaint includes allegations targeting claim 1's "non-volatile memory" limitation but does not allege that the accused products contain non-volatile memory "for program and data storage." D.I. 1-1 at 9:56-57; *see* D.I. 1 ¶ 27 (omitting discussion of the complete "non-volatile memory" limitation).

- The complaint includes allegations targeting claim 1's "large volatile memory" limitation but does not allege that the accused products contain a large volatile memory "for

7

two limitations, however, and the presence of facts undermining Sentient's infringement allegations, each justify dismissal on their own.

> **1. The complaint does not plead facts indicating that the accused products are capable of "digitizing the analog inputs at one of at least two possible bit depths" and instead identifies only one possible bit depth per accused product.**

The complaint does not plead facts indicating that the accused products include "a plurality of analog-to-digital converters for receiving a plurality of analog inputs, digitizing the analog inputs *at one of at least two possible bit depths*, thereby generating digital inputs, and providing the digital inputs to the processor." D.I. 1-1 at 10:8-12 (emphasis added). Rather, it pleads the opposite: only *one* possible bit depth per accused product.

As an initial matter, the complaint is not specific as to how each accused product allegedly satisfies each element of the asserted claim. Instead, the complaint paraphrases claim elements and pairs those simplifications with highlighted screen shots of Xilinx materials for multiple different accused products. *See* D.I. 1 ¶¶ 26-37. These allegations do not explain how the highlights correspond to the paraphrased claim limitations or how the paraphrased limitations correspond to the actual claim language.

---

additional program and data storage." D.I. 1-1 at 9:58-59; *see* D.I. 1 ¶ 28 (omitting discussion of the complete "large volatile memory" limitation).

- The complaint includes allegations targeting claim 1's "processor" and "embedded memory" limitations but does not allege that the embedded memory stores "an initialization program." D.I. 1-1 at 9:63-67; *see* D.I. 1 ¶ 31 (omitting discussion of any "initialization program").

- The complaint alleges that the accused products include an FPGA, "which can be arranged to run independent processes in parallel with the ARM processing core," but it includes no facts in support of the "independent" limitation beyond a conclusory assertion. *Compare* D.I. 1-1 at 10:4-7 *with* D.I. 1 ¶ 33.

The allegations also do not explain whether the complaint contends that the accused products all infringe in the same way or each infringes differently. *Id.* To determine whether the complaint states a claim for direct infringement based on any specific accused product, the Court must examine the allegations *for that accused product*, individually. For example, the complaint does not allege that citations to materials describing Zynq-7000 relate to Zynq UltraScale+ products, or vice versa.

The complaint suffers from the flaws described above for the limitation "at least two bit depths," addressed only in paragraph 34. D.I. 1 ¶ 34. First, the complaint does not address the actual claim language. *Id.* Instead, it asserts "Xilinx documentation describes one or more of the Xilinx '177 Products as including analog to digital converters ('ADCs') and on-chip temperature sensing ADCs and configurable interfaces for external ADCs that can operate at multiple bit depths." *Id.* This allegation does not assert that *any* accused product can digitize analog signals at more than one bit depth—it only asserts that the products have analog to digital converters (ADCs) and interfaces without any allegations about their bit depths. *Id.* Instead, it addresses "bit depths" only for "*external* ADCs that can operate at multiple bit depths" (emphasis added) and does not allege that such "external" ADCs are part of the accused products as sold. *Id.*

Accordingly, the complaint's citations to Xilinx materials for each accused product in paragraph 34 identify only *one* bit depth at which each accused product can digitize analog inputs using analog-to-digital converters (ADCs). *Id.* The cited Xilinx materials indicate that Zynq-7000 products can digitize to only one bit depth ("12-bit"), that Zynq UltraScale+ products can digitize to only one bit depth ("16-bit"), and that Versal products can digitize to only one bit

9

depth ("10-bit").[3] *Id.* These facts do not suggest that any accused product satisfies "at least two possible bit depths." Instead, the complaint suggests that the accused products do *not* infringe. The table below organizes the cited materials by accused product series.

| Accused Product | Analog-to-Digital Conversion Allegation |
|---|---|
| Zynq-7000 | "Dual 12-bit 1 MSPS analog-to-digital converters (ADCs)."<br><br>**XADC (Analog-to-Digital Converter)**<br><br>Highlights of the XADC architecture at I-grade temperature specs include:<br><br>• Dual 12-bit 1 MSPS analog-to-digital converters (ADCs)<br>• Up to 17 flexible and user-configurable analog inputs<br>• On-chip or external reference option<br>• On-chip temperature (±4°C max error) and power supply (±1% max error) sensors<br>• Continuous JTAG access to ADC measurements<br><br>All XA Zynq-7000 SoCs integrate a new flexible analog interface called XADC. When combined with the programmable logic capability of the XA Zynq-7000 SoCs, the XADC can address a broad range of data acquisition and monitoring requirements. For more information, go to: http://www.xilinx.com/ams.<br><br>The XADC contains two 12-bit 1 MSPS ADCs with separate track and hold amplifiers, an on-chip analog multiplexer (up to 17 external analog input channels supported), and on-chip thermal and supply sensors. The two ADCs can be configured to simultaneously sample two external-input analog channels. The track and hold amplifiers support a range of analog input signal types, including unipolar, bipolar, and differential. The analog inputs can support signal bandwidths of at least 500 KHz at sample rates of 1MSPS. It is possible to support higher analog bandwidths using external analog multiplexer mode with the dedicated analog input (see UG480, *7 Series FPGAs and Zynq-7000 SoC XADC Dual 12-Bit 1MSPS Analog-to-Digital Converter User Guide*).<br><br>The XADC optionally uses an on-chip reference circuit (±1%), thereby eliminating the need for any external active components for basic on-chip monitoring of temperature and power supply rails. To achieve the full 12-bit performance of the ADCs, an external 1.25V reference IC is recommended.<br><br>D.I. 1 at p. 29 (highlighting original to complaint). |
| Zynq UltraScale+ | "The ADCs produce a 16-bit conversion result, and the full 16-bit result (or averaged result) is stored in the 16-bit measurement registers."<br><br>**Measurement Registers**<br><br>The ADCs produce a 16-bit conversion result, and the full 16-bit result (or averaged result) is stored in the 16-bit measurement registers. The specified 10-bit accuracy corresponds to the 10 MSBs (most significant or left-most bits) in the 16-bit ADC conversion result. The unreferenced LSBs can be used to minimize quantization effects or improve resolution through averaging or filtering.<br><br>D.I. 1 at p. 29 (highlighting original to complaint). |

---

[3] For Versal products, the complaint also does not plead facts indicating "a plurality of analog-to-digital converters." D.I. 1-1 at 10:8. The complaint identifies only one 10-bit ADC (in "[t]he core of the system monitor," or "SYSMON"). D.I. 1 at p. 29-30.

10

| Accused Product | Analog-to-Digital Conversion Allegation |
|---|---|
| Versal | "The core of the system monitor is a 10-bit 200kSPS ADC . . . ." <br><br> **System Monitoring** <br><br> The PMC contains system monitoring capability for monitoring voltage and temperature in the PS and PL to enhance the overall safety, security, and reliability of the system. The core of the system monitor is a 10-bit 200kSPS ADC, which can be accessed via JTAG, PMBus, or I2C interfaces, via the PS directly, and via the PL through the NoC. <br><br> Dkt. 1 at p. 29 (highlighting original to complaint). |

No interpretation of the claim language "at least two possible bit depths" would cover a system capable of digitizing to only *one* possible bit depth. "Two" cannot mean "one." Like other cases in which this Court has granted motions to dismiss pursuant to Rule 12(b)(6), the Court need not construe claim language to determine that "no reasonable view of the facts pled in [the] Complaint . . . would support a claim for relief." *See, e.g.*, *Cumberland Pharms. Inc. v. Sagent Agila LLC*, C.A. No. 12-825-LPS, 2013 WL 5913742, at *2 (D. Del. Nov. 1, 2013) ("No claim construction is necessary in order to determine that 'free from a chelating agent' means that a claimed composition may not include a chelating agent.").

Moreover, the complaint pleads no facts to show that the accused products "provid[e] the digital inputs to the processor." D.I. 1-1 at 10:11-12. The complaint does not address that element in paragraph 34—which purports to address the analog-to-digital conversion limitation—or anywhere else. *See generally* D.I. 1. The complaint does not plead facts sufficient to show that the accused products satisfy each limitation of the asserted claim and, thus, does not state a plausible claim for direct infringement.

### 2. The complaint does not plead facts indicating that the accused products include "non-volatile memory" separate from "embedded memory for storing an initialization program."

For each accused product, the complaint identifies only a single memory to satisfy two separate, distinct memory limitations. For this second, independent reason, Xilinx requests that the Court dismiss Sentient's direct infringement claim.

Claim 1 recites two separate memory limitations: "non-volatile memory storage component" and "an embedded memory for storing an initialization program." D.I. 1-1 at 9:56-57, 63-64. The claimed embedded memory must store a program "that enables the processor to start up processing *without first retrieving a program from the non-volatile memory*." *Id.* at 9:65-67 (emphasis added). A processor cannot retrieve a program from embedded memory *without* retrieving a program from non-volatile memory if the embedded memory *is* the non-volatile memory. No reasonable interpretation of the claim language would allow these limitations to read on the same accused memory. *See Cumberland Pharms.*, 2013 WL 5913742, at *2.

Yet for each accused product the complaint appears to identify only one memory—a specific ROM—to satisfy these separate limitations (though again, the complaint does not precisely map actual claim language to the accused products or explain how the cited materials correspond to the claim language). The table below identifies, from the highlighted citations, what the complaint appears to assert for the "non-volatile memory" and "embedded memory" limitations for each accused product series.

| Accused Product | Non-Volatile Memory Allegation | Embedded Memory Allegation |
|---|---|---|
| Zynq-7000 | "The BootROM executes the on-chip ROM code to perform the system boot process." D.I. 1 ¶ 27, p. 10.<br><br>**Accused: BootROM** | "[T]he PS [processing system] begins executing the BootROM code in the on-chip ROM to boot the system. . . . The BootROM is the first software to run in the APU." D.I. 1 ¶ 31, p. 21.<br><br>**Accused: BootROM** |
| Zynq UltraScale+ | "The CSU executes code out of on-chip ROM and copies the first stage boot loader (FSBL) from the boot device to the OCM [on-chip memory]." D.I. 1 ¶ 27, p. 10.<br><br>**Accused: CSU ROM** | "The CSU executes code out of on-chip ROM and copies the first stage boot loader (FSBL) from the boot device to the OCM [on-chip memory]." D.I. 1 ¶ 31, p. 22.<br><br>**Accused: CSU ROM** |
| Versal | "The PMC includes the deeply embedded ROM code unit (RCU) for device boot and platform processing unit (PPU) that executes the platform loader and manager (PLM)." D.I. 1 ¶ 27, p. 11.<br><br>**Accused: RCU ROM** | "The deeply embedded RCU is the first processor to start up after a power-on reset (POR). The RCU executes its BootROM code to initialize the system and validate the boot device." D.I. 1 ¶ 31, p. 22.<br><br>**Accused: RCU ROM** |

The complaint's direct infringement allegations fall short because they do not identify separate and distinct non-volatile memory and embedded memory on any accused device. The complaint includes references to external memory interfaces, but those allegations do not assert that Xilinx provides those external memories in any accused product. *See, e.g.*, D.I. 1 at p. 9 (citing Zynq-7000 "memory interfaces"), p. 10 (citing Zynq UltraScale+ "External Memory Interfaces"), p. 11 (citing Versal's "flash memory controllers"). The complaint does not plead facts indicating that the accused products satisfy both the "non-volatile memory" and "embedded memory" limitations of the asserted claim. It fails to state a claim for direct infringement.

13

### B. The complaint does not state a claim for induced infringement.

Because the complaint does not state a claim for direct infringement, it also does not state a claim for inducement of infringement under 35 U.S.C. § 271(b). "A plaintiff can prevail on claims of induced and contributory infringement only if it establishes direct infringement." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019).

Again, the complaint does not allege facts sufficient to suggest that the accused products satisfy the "at least two possible bit depths" limitation, and it includes no allegation that a third party satisfies that missing limitation. D.I. 1 ¶¶ 40-47 (inducement allegations). The complaint includes an allegation that Xilinx induces infringement by providing memory controllers to interact with external memories, *id.* ¶ 44, but it is silent as to analog-to-digital conversion at more than one bit depth. *Id.* ¶¶ 40-47. The complaint fails to state a claim for inducement under § 271(b).

### C. The complaint does not state a claim for contributory infringement.

Because the complaint does not allege facts sufficient to suggest that the accused products satisfy the "at least two possible bit depths" limitation, and because it does not allege that a third party satisfies that limitation, *id.* ¶¶ 48-57 (contributory infringement allegations), the complaint does not state a claim for direct infringement by anyone and thus cannot state a claim for contributory infringement under 35 U.S.C. § 271(c). *Bos. Sci. Corp.*, 415 F. Supp. 3d at 491.

In addition, the complaint does not allege any facts indicating that the accused products have no substantial non-infringing use. A party is liable for contributory infringement when it sells "a component of a patented . . . combination . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed.

14

Cir. 2017) (quoting 35 U.S.C. § 271 (c)). To state a claim for contributory infringement, the complaint "must plausibly allege that the accused infringer knew of the asserted patents and must plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citations and internal quotation marks omitted). "[A] substantial non-infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *In re Bill of Lading*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (citation and internal quotation marks omitted).

The complaint offers just one conclusory allegation on this required element: "Xilinx sells and offers to sell infringing products to its customers that are not staple articles of commerce and that have no substantial uses outside of those that infringe the '177 Patent." D.I. 1 ¶ 53. "Th[is] court has previously dismissed allegations of contributory infringement which fail to allege facts demonstrating that the products bore no substantial non-infringing uses." *Philips v. ASUSTeK Computer Inc.*, C.A. No. 15-1125-GMS, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016).

Because the complaint includes only a conclusory assertion regarding non-infringing uses, without supporting facts, the Court should dismiss the contributory infringement claim. *See, e.g.*, *Uniloc 2017 LLC*, 2020 WL 4260616, at *6 (dismissing contributory infringement claim because "Uniloc's allegations [related to no substantial non-infringing use] amount to conclusory allegations of contributory infringement without providing any factual information permitting the court to draw such an inference"); *Philips*, 2016 WL 6246763, at *4 (dismissing contributory infringement claim because plaintiff "provides no facts supporting the inference that the Accused Functionalities have no substantial non-infringing use beyond the assertion that

15

'upon information and belief . . . the only use for the [ ] Accused Functionality is infringing the patent' and that the 'Defendants know' this").

## VI. CONCLUSION

The complaint does not allege facts sufficient to indicate that any Xilinx product infringes the '177 patent. The law requires facts sufficient to map each limitation of at least one asserted claim to the accused products, and facts sufficient to support each element of each cause of action. The complaint does not plausibly allege that any Xilinx product directly infringes the '177 patent. It does not identify any third party that directly infringes. It does not plausibly allege that Xilinx induces direct infringement. And it does not plausibly allege an absence of substantial non-infringing uses tied to any accused component. Indeed, the complaint pleads facts instead indicating that the products do *not* infringe. Xilinx therefore requests that the Court dismiss Sentient's complaint with prejudice.

Date: April 1, 2022

| | |
|---|---|
| OF COUNSEL: | */s/ Frederick L. Cottrell, III* <br> Frederick L. Cottrell, III (#2555) |
| Aaron R. Fahrenkrog (*pro hac vice*) | Alexandra M. Ewing (#6407) |
| Emily J. Tremblay (*pro hac vice*) | RICHARDS, LAYTON & FINGER, P.A. |
| Mary Pheng (*pro hac vice*) | One Rodney Square |
| William R. Jones (*pro hac vice*) | 920 North King Street |
| ROBINS KAPLAN LLP | Wilmington, DE 19801 |
| 800 LaSalle Avenue | (302) 651-7700 |
| Suite 2800 | cottrell@rlf.com |
| Minneapolis, MN 55402 | ewing@rlf.com |
| (612) 349-8500 | |
| AFahrenkrog@RobinsKaplan.com | *Attorneys for Defendant Xilinx, Inc.* |
| ETremblay@RobinsKaplan.com | |
| MPheng@RobinsKaplan.com | |
| WJones@RobinsKaplan.com | |